IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRIENDS OF THE COLUMBIA
GORGE, INC. et al.,

               Plaintiffs,

    v.

EDWARD T. SCHAFER, Secretary of
the U.S. Department of Agriculture et al.,

               Defendants.

No. CV 04-1423-MO

OPINION AND ORDER

**MOSMAN, J.,**

For at least the last 18,000 years, since its scouring by the Lake Missoula Flood, the

Columbia River Gorge has been one of the most unusual and beautiful places on earth. Its

centerpiece, of course, is the mighty Columbia River, a 2000 kilometer jewel that divides much

of Oregon and Washington. But trimming that river on either side are dozens of waterfalls, river

canyons, basalt cliffs, and volcanoes that make up this remarkable area. In addition to its natural

beauty, it is also a major shipping route connecting the Pacific Northwest with its markets in all

directions. In many places in the Gorge it is possible to stand in the spray of a moss covered

waterfall, visually removed from the modern world, and be just a few hundred feet from an

interstate freeway, a major rail line, and river and air traffic. It is also home to many vibrant

communities and major tourist attractions, including world famous windsurfing. Finally, the

PAGE 1 - OPINION AND ORDER

river itself is crossed by as series of dams, making it the largest producer of hydroelectric power of any river in North America.

Against this backdrop of competing interests and features, Congress designated a portion of the Gorge as a National Scenic Area. This case concerns the Columbia River Gorge National Scenic Area ("Scenic Area") and its management. The Friends of the Columbia Gorge, Inc. and other organizational and individual plaintiffs (collectively "Friends of the Gorge") challenge the decision by Regional Forester Linda Goodman, acting on behalf of Edward Schafer, Secretary of Agriculture (collectively "Secretary"), to concur with the Columbia River Gorge Commission ("Commission") that the Revised Management Plan ("RMP") for the Scenic Area is consistent with the standards and purposes of the Columbia River Gorge National Scenic Area Act ("Scenic Area Act"), 16 U.S.C. §§ 544-544p. Friends of the Gorge alleges that the Secretary's decision was arbitrary and capricious or in violation of the law because provisions of the RMP violate the Scenic Area Act.

The matters now before the court are Friends of the Gorge's Motion for Summary Judgment (#76), the Secretary's Cross-Motion for Summary Judgment (#91), and the Secretary's Motion for a Stay (#97). The majority of Friends of the Gorge's claims are not ripe for judicial review; in particular claims 1.1, 1.2, 2.1, 2.2, 4, 5, and 6. Claims 2.3, 2.4, 7, and 8 require the court to determine whether the Secretary's action was arbitrary and capricious or not in accordance with the law. The court holds that the Secretary's concurrence was not in accordance with the law as to the Rowena Dell portion of claim seven and as to claim eight. Friends of the Gorge's motion for summary judgment is therefore DENIED as to claims one through six, GRANTED IN PART and DENIED IN PART as to claim seven, and GRANTED as to claim

PAGE 2 - OPINION AND ORDER

eight.  Accordingly, the Secretary's cross-motion is GRANTED as to claims one through six,

GRANTED IN PART and DENIED IN PART as to claim seven, and DENIED as to claim eight.

The Secretary's motion for a stay pending a decision by the Oregon Supreme Court is DENIED.

## BACKGROUND

I.    **The Columbia River Gorge National Scenic Area Act**

In 1986, President Reagan signed the Scenic Area Act into law, creating the Scenic Area.

The Scenic Area falls within two states, Oregon and Washington, and six counties, Hood River,

Multnomah, and Wasco counties in Oregon, and Clark, Klickitat, and Skamania counties in

Washington.  It also includes federal land, primarily the Mt. Hood and Gifford Pinchot National

Forests.

The Act creates rules and procedures for managing the Scenic Area to further the goals

of:

> (1)    establish[ing] a national scenic area to protect and provide for the
> enhancement of the scenic, cultural, recreational, and natural resources of the
> Columbia River Gorge; and
> (2)    protect[ing] and support[ing] the economy of the Columbia River Gorge area
> by encouraging growth to occur in existing urban areas and by allowing
> future economic development in a manner that is consistent with paragraph
> (1).

16 U.S.C. § 544a.  It also divides the land in the Scenic Area into three categories: (1) special

management areas, (2) urban areas, and (3) general management areas.[1]  The special management

areas are specifically identified in the Act and are largely considered the most vulnerable areas.

*Id.* § 544b(b).  They are generally subject to the most stringent regulations.  The urban areas are

_____

[1]The term "general management area" does not appear in the Scenic Area Act; however,
the term is used throughout the management plan to identify lands not within either the special
management or urban areas.

PAGE 3 - OPINION AND ORDER

also specifically identified in the Act. *Id.* § 544b(d).  The general management areas are all the remaining lands within the Scenic Area not designated as special management or urban areas.

A unique aspect of the Scenic Area Act is the division of management authority it creates between the Secretary, the Commission, and various local governments.

### A.    *The Commission*

The Commission is a bi-state agency created by Oregon and Washington through an interstate compact.  Or. Rev. Stat. § 196.150; Wash. Rev. Code § 43.97.015.  Congress ratified the states' agreement and provided specifications for the Commission in the Act.  Congress specified that the Commission is to be composed of one member from each of the counties, appointed by the governing body of the counties; three members from each state, at least one of whom lives within the Scenic Area, appointed by the respective state governor; and one non-voting member from the Forest Service appointed by the Secretary of Agriculture, for a total of thirteen members.  16 U.S.C. § 544c(a)(C).  Congress also specified that the Commission was to adopt regulations to govern its affairs so that there would be a uniform system of laws governing the Commission's actions, in addition to the Scenic Area Act itself.  *Id.* § 544c(b).  The Commission has management authority over the non-federal land within the Scenic Area.  *Id.* §§ 544e(a); 544d(b).

### B.    *The Secretary*

The Secretary has primary authority over the federal lands within the Scenic Area.  *Id.* §§ 544d(c)(4); 544f(a)(1).  He also has increased authority over non-federal lands in the special management areas.  *Id.* § 544f(f)(1) ("[T]he Secretary shall, in consultation with the

Commission, develop guidelines to assure that non-Federal lands within the special management areas are managed consistent with [the management plan] and the purposes of [the Act].").

C.   *Local Governments and Other Entities*

Other governing entities within the Scenic Area, including local governments and Indian tribes, also play a management role.  For example, section 544d(e) provides that the Commission and the Secretary "shall exercise their responsibilities pursuant to [the Scenic Area Act] in consultation with Federal, State, and local governments having jurisdiction within the scenic area or expertise pertaining to its administration and with Indian tribes."  The counties are also permitted to adopt land use ordinances consistent with the management plan.  However, if a county fails to do so within the time provided by the Scenic Area Act, the Commission "shall make and publish a land use ordinance setting standard for the use of non-Federal lands in such county within the boundaries of the national scenic area, excluding urban areas."  *Id.* § 544e(c)(1).

D.   *The Management Plan*

The Scenic Area Act mandates that the Commission adopt a Scenic Area management plan within three years of the Commission being formed.  *Id.* § 544d(c).  The terms of the plan relating to federal land and special management areas are to be provided by the Secretary and incorporated without change by the Commission.  *Id.* §§ 544d(c)(4), (c)(5)(a).  Once the Commission adopts a management plan, including the provisions provided by the Secretary, it forwards the plan to the Secretary for review.  *Id.* § 544d(f)(1).  The Secretary then has three options: he can (1) expressly concur, (2) do nothing for ninety days, which is then deemed a concurrence, or (3) deny concurrence and submit suggested modifications to the Commission.

PAGE 5 - OPINION AND ORDER

*Id.* § 544d(f)(1)-(2).  If concurrence is denied, the Commission can either revise and resubmit the plan or override the Secretary's denial with a two-thirds vote of its membership, including a majority from each state, in favor of adopting the plan without the Secretary's proposed modifications.  *Id.* § 544d(f)(3).

After a plan is adopted, the Commission must review it to determine whether it should be revised, "[n]o sooner than five years after adoption . . . but at least every ten years."  *Id.* § 544d(g).  When the Commission adopts a revised management plan, it must be submitted to the Secretary for "review and concurrence," using the process described above.  *Id.*

## II.    **The Revised Management Plan**

The Commission adopted the initial management plan for the Scenic Area in October 1991.  The Secretary concurred that the plan was consistent with the purposes and standards of the Scenic Area Act in early 1992, and the management plan has been in effect since that time.  In 1997, the Commission and the Forest Service began the first review of the plan and the Commission adopted the final RMP in April 2004.  The RMP was then sent to the Secretary for review, and the Secretary delegated his authority to review the plan to the Regional Forester for the Pacific Northwest Region of the Forest Service, Linda Goodman.  Friends of the Gorge filed a complaint in Oregon state court in June 2004, challenging the Commission's adopted revisions.  In August, Regional Forester Goodman issued a written decision expressing the Secretary's concurrence with the RMP.  Friends of the Gorge filed this action in October 2004.

The Secretary filed a motion to dismiss, a motion for partial summary judgment, and a motion to stay the case pending a decision by the Oregon Court of Appeals in the concurrent state case.  In December 2005 the court denied the motion to dismiss and granted the motion to stay

the case.  In March 2006 the court denied the motion for partial summary judgment, with leave to

refile.  The stay ended in January 2008 after the Oregon Court of Appeals issued its decision in

*Friends of the Columbia Gorge, Inc. v. Columbia River Gorge Commission*, 171 P.3d 942 (Or.

Ct. App. 2007).[2]  The parties then filed cross-motions for summary judgment.

    Friends of the Gorge seeks (1) a declaration that the Secretary's concurrence and the

challenged portions of the RMP violate the Scenic Area Act, and (2) an injunction against

implementation of the challenged portions of the RMP until they comply with the Act.

    In his cross-motion for summary judgment, the Secretary counters that: (1) Friends of the

Gorge lacks standing to pursue their claims; (2) the claims are not ripe for adjudication; and (3)

the Secretary's concurrence was not arbitrary or capricious and was in accordance with a

reasonable interpretation of the Scenic Area Act.

## STANDARD OF REVIEW

    For cross-motions for summary judgment, the court "evaluate[s] each motion separately,

giving the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of

Nevada v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quoting *ACLU of Nevada v.

City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003)).  Summary judgment is proper when

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c).

    The Scenic Area Act provides for judicial review, 16 U.S.C. § 544m(b), but does not

provide a standard of review; therefore, the Administrative Procedure Act ("APA") standards

---

    [2] The decision of the Oregon Court of Appeals was appealed to the Oregon Supreme
Court, which allowed review in July 2008.  *Friends of the Columbia Gorge, Inc. v. Columbia
River Gorge Comm'n*, 189 P.3d 749 (Or. 2008).

apply.  *See Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1193-94 (9th Cir.

2000).  Under the APA, a court may "hold unlawful and set aside agency action, findings, and

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2)(A).

An agency action is arbitrary and capricious "if the agency has relied on factors which

Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983).  Generally, "review under the 'arbitrary and capricious' standard is

narrow and a court is not to substitute its judgment for that of the agency."  *Id.*  The Ninth

Circuit, in *Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) (en banc), reiterated the

importance of granting deference to the agency, stating that the court is to ensure only that the

agency has "made no 'clear error of judgment' that would render its action 'arbitrary and

capricious.'"  *Id.* at 993 (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989)).

However, in order for agency action to be upheld, "the agency must examine the relevant data

and articulate a satisfactory explanation for its action including a 'rational connection between the

facts found and the choice made.'"  *Motor Vehicle Mfrs.*, 463 U.S. at 43 (quoting *Burlington

Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

The Secretary argues that because Friends of the Gorge made facial challenges to the

RMP, they bear the burden of demonstrating that no set of circumstances exists under which the

challenged portions of the plan may be lawfully applied.  (Defs.' Mem. in Supp. of Summ. J.

PAGE 8 - OPINION AND ORDER

(#92) at 29 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a

legislative Act is, of course, the most difficult challenge to mount successfully, since the

challenger must establish that no set of circumstances exists under which the Act would be

valid."); *Reno v. Flores*, 507 U.S. 292, 301 (1993) (extending the "no set of circumstances"

standard to agency regulations reviewed for inconsistency with the authorizing statute).)

However, the Ninth Circuit has recently called the "no set of circumstances" standard into

question. *See Sierra Club v. Bosworth*, 510 F.3d 1016, 1023-24 (9th Cir. 2007) (stating that

Supreme Court jurisprudence is divided on whether the standard is dicta or a generally applicable

rule, collecting cases, and refusing to apply the standard to the Forest Service's establishment of

National Environmental Policy Act ("NEPA") categorical exclusions).  Therefore, this court will

apply the traditional arbitrary and capricious standard in this case.

When a court reviews an agency's construction of a statute it administers, it must first

determine "whether Congress has directly spoken to the precise question at issue." *Chevron

U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  When Congress has

expressed its clear and unambiguous intent both the court and the agency must give effect to that

intent.  *Id.* at 842-43.  However, "if the statute is silent or ambiguous with respect to the specific

issue, the question for the court is whether the agency's answer is based on a permissible

construction of the statute."  *Id.* at 843.  Thus, deference is due to the agency's interpretation of a

statute only when a statute is silent or ambiguous as to the question at issue.

**DISCUSSION**

I.  **Justiciability**

The Secretary's motion for summary judgment argues that the court lacks subject matter jurisdiction over the case because (1) Friends of the Gorge lacks standing and (2) the case is not ripe for adjudication.  (Defs.' Mem. in Supp. of Summ. J. (#92) at 25, 27.)  "The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court."  *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001).

A.  *Standing*

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). To establish constitutional standing, the "'plaintiff must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  The Secretary does not challenge the causation element of standing, therefore it is not analyzed below.

Where the plaintiff is an organization, as several of the plaintiffs are here, it has standing to sue on behalf of its members where the "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the

lawsuit." *Laidlaw Envtl. Servs.*, 528 U.S. at 181.  Friends of the Gorge, Columbia Riverkeeper,

and 1000 Friends of Oregon are non-profit organizations dedicated to the protection and

enhancement of the resources of the Scenic Area or of Oregon as a whole, making the interests at

stake in this case germane to the purposes of the organizations.  Participation by individual

plaintiffs is not necessary in this case.  Thus, if at least one member of Friends of the Gorge,

Columbia Riverkeeper, or 1000 Friends of Oregon has standing, standing is established.

     **1.**        **Injury in Fact**

To establish an injury-in-fact, plaintiffs must allege that they have suffered a concrete,

particularized harm as to each individual claim.  *See id.* at 185 ("Standing is not dispensed in

gross." (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996))).  Harm to the environment in

general is not sufficient.  *Id.* at 181.

In *Laidlaw*, the defendant was given a permit to discharge treated water into a nearby

river.  Testing showed that Laidlaw was exceeding the allowable pollution levels under its

permit.  An environmental action group sued the company for failing to comply with the permit

standards.  Plaintiffs asserted they were harmed by Laidlaw's actions because they had used the

river for various recreational activities, but were now afraid to do so because of the smell and

pollution caused by Laidlaw.  The Supreme Court held the group had standing because "they aver

that they use the affected area and are persons for whom the aesthetic and recreational values of

the area will be lessened by the challenged activity." *Laidlaw Envtl. Servs.*, 528 U.S. at 183

(internal quotations and citation omitted).

The fact that an injury has not yet occurred does not defeat a finding of standing.  *See*

*Wilbur v. Locke*,  423 F.3d 1101, 1108 (9th Cir. 2005) (holding that "[o]ne does not have to await

the consummation of threatened injury before challenging" an action and seeking declaratory

relief (quoting *Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002))).  In *Wilbur*, plaintiffs

alleged they would suffer injury from a compact between the state and an Indian Tribe.

However, because the compact had not yet been enacted, the district court held the injury was

only "likely," not "actual or imminent."  *Id.*  The Ninth Circuit reversed, holding that where the

complaint stated that the compact would be enacted "within the near future," plaintiffs' alleged

injury was "sufficiently imminent to satisfy the requirement of an injury in fact."  *Id.*

Here, Friends of the Gorge has alleged sufficient injury for standing.  They allege that

their purpose is to protect and enhance the resources of the Scenic Area and that their members

use the land at issue for "hiking, wildlife viewing, photography, camping, bird watching, and

other recreational pursuits."  (Gorman Decl. (#101) at 2.)  Further, there are several individual

plaintiffs who live, do business, or own property in the Scenic Area.  Collectively, Friends of the

Gorge asserts implementation of the plan revisions will have a direct negative impact on their

activities and interests.[3]  Some of the plaintiffs have also alleged potential financial injury due to

the Secretary's action.  (Third Am. Compl. (#73) at 4.)  The RMP has been adopted by the

Commission and ratified by the Secretary, thus the potential injury is sufficiently imminent under

*Wilbur*.

## 2.    Redressability

To have standing, plaintiffs must show that there is a substantial likelihood that the

requested relief, if granted, will redress the injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992).  The Scenic Area Act grants plaintiffs the right to bring suit challenging a final

---

[3] Plaintiffs have filed individual declarations (##100-109) to this effect.

PAGE 12 - OPINION AND ORDER

action of the Secretary "requesting such action . . . be modified, terminated, or set aside."  16 U.S.C. § 544m(b)(4)(A).  Here, Friends of the Gorge seeks three types of relief relevant to this inquiry: (1) a declaratory judgment that the Secretary's actions violated the Act, (2) a declaratory judgment that the revised plan violates the Act, and (3) an injunction prohibiting implementation of the challenged portions of the revised plan "until such time as the Plan is corrected to comply with the . . . Act."  (Third Am. Compl. (#73) at 14.)  The first request for relief relates specifically to the Secretary's concurrence, requesting that it be set aside by this court.  The second and third requests for relief relate to the rest of Friends of the Gorge's claims regarding injuries allegedly caused by specific provisions of the RMP with which the Secretary concurred.

The Secretary argues that Friends of the Gorge's claims are not redressable because the Secretary's concurrence is not required for the RMP to go into effect.  (Defs.' Reply (#112) at 7.) He further argues that this court does not have the power to require the Secretary to deny his concurrence because the Scenic Area Act expressly states that the Secretary need not act at all. (*Id.*)  Under the Act, the Secretary has ninety days to concur or deny his concurrence with the Commission regarding the management plan's consistency with the Scenic Area Act; if no action is taken within ninety days, the Secretary is deemed to have concurred.  16 U.S.C. § 544d(f)(1). If the concurrence is denied by the Secretary, the Commission has 120 days to revise and resubmit the plan to the Secretary or to pass the management plan over the dissent of the Secretary by a two-thirds vote of the Commission membership, including a majority from each state.  *Id.* § 544d(f)(3).

Perhaps the single biggest obstacle to the Secretary's position on redressability is that the Scenic Area Act specifically provides for judicial review—review that is presumably designed to

redress errors in the implementation of the Act.  If the Secretary were correct regarding the power

of this court, he would effectively be insulated from suit under the statute.  This was not the

intent of Congress in creating the citizen suit and judicial review provisions of the Scenic Area

Act.  *See id.* §§ 544m(b)(2) (citizen suit provision), 544m(b)(4) (judicial review provision),

544m(b)(5) (giving federal courts jurisdiction over "any civil action brought against the Secretary

pursuant to this section").[4]

     In any event, it is purely speculative whether the Commission would have chosen (or

would choose in the future) to overrule a denial of concurrence by the Secretary.  Furthermore,

the Secretary's failure to act (which becomes a concurrence after ninety days) is subject to

review, because Friends of the Gorge would be adversely affected by that final inaction of the

Secretary.  *See id.* § 544m(b)(4).

     The Secretary also argues that this court does not have the power to set aside portions of

the RMP as a remedy because the "agency action" involved was a concurrence indicating that the

Secretary found the plan to be consistent with the Scenic Area Act, rather than the actual

adoption or implementation of the plan.  (Defs.' Reply (#112) at 7.)  This is somewhat

disingenuous because the Secretary is charged with developing guidelines applicable to the

special management areas.  16 U.S.C. § 544f(f)(1).  The Scenic Area Act states that the Secretary

---

     [4] The Oregon Court of Appeals determined that the management of the special
management areas was entrusted solely to the Secretary of Agriculture and the Forest Service,
not to the Commission.  *Friends of the Columbia Gorge, Inc. v. Columbia River Gorge Comm'n*,
171 P.3d 942, 958-59 (2007) (citing 16 U.S.C. § 544d(c)(4)).  Therefore, the court rejected all the
special management area related claims.  *Id.*  This issue does not appear to be before the Oregon
Supreme Court on appeal.  *See* Or. S. Ct. Media Release (July 2, 2008) at 1-5.  Review of actions
taken regarding the special management areas is therefore not available in the Oregon courts and
would be completely unavailable if this court did not have jurisdiction.

"shall promptly transmit the guidelines to the Commission for inclusion in the management plan," *id.*, and the management plan "shall incorporate without change the management direction for the use of Federal lands within and the land use designations for the special management areas adopted by the Secretary," *id.* § 544d(c)(4). Friends of the Gorge's claims relate solely to the special management areas.

This unusual piece of legislation is grounded in the idea of cooperation among different levels of government. It seems out of character with the terms of the Scenic Area Act to suggest that any order by this court will simply be ignored, rather than taken into account, in implementing the RMP.

### B.   *Ripeness*

The Secretary also asserts that this court lacks jurisdiction because the case is not ripe. "[T]he ripeness requirement is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). In deciding whether a case is ripe, courts consider the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 733 (internal quotations and citations omitted). The Court, in *Ohio Forestry*, considered: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Id.*

In *Ohio Forestry*, the Secretary of Agriculture had developed a land and resource management plan under the National Forest Management Act of 1976 for a national forest in Ohio. *Id.* at 728-29. As part of the plan, the Forest Service set logging goals for the forest, but did not authorize the cutting of any trees. *Id.* at 729. Rather, before the Forest Service could issue a logging permit, it had to propose a specific project, ensure that it fit within the bounds of the management plan, and provide due process to those affected by the proposal. *Id.* at 729-30. Adopting the general management plan did, however, make the occurrence of logging activities more likely. *Id.* at 730. Before the Forest Service issued any logging permits or identified a specific logging project, the Sierra Club filed suit challenging the management plan. *Id.* The Supreme Court held that the case was not ripe. First, withholding immediate review would not cause the Sierra Club significant hardship because the management plan itself did not create or alter any legal rights or obligations, or grant, withhold, or modify any formal legal license. *Id.* at 733. The plan did not impose a practical harm on the Sierra Club's interests because before logging could occur, the Forest Service would have to go through the process outlined above. *Id.* at 733-34. The plan did not force the Sierra Club to alter its behavior. *Id.* at 734. Second, an immediate decision would interfere with agency efforts to refine its policies through application of the plan in practice. *Id.* at 735. Third, the court would benefit from further factual development because the claims were currently abstract and required the court to predict "consequences that may affect many different parcels of land in a variety of ways." *Id.* at 736.

Finally, the Court noted that Congress had not provided for pre-implementation review of forest plans.[5]  *Id.* at 737.

Friends of the Gorge attempts to distinguish *Ohio Forestry*, pointing out that in that case the Forest Service, the agency who adopted the plan, would have significant future involvement before any ground-disturbing activity would occur.  They state that in the present case the Secretary will have no further involvement in implementing the revised plan except with regard to special management area forest practices and decisions regulating uses of federal land.  (Pls.' Reply (#98) at 13.)  However, federal land comprises the vast majority of the special management areas of concern in this case, therefore the Secretary and the Forest Service will be involved in the future management of the majority of the relevant land.[6]

Friends of the Gorge argues that if this court finds some or all of the claims unripe it will merely delay review to a less advantageous time, after the harm has already occurred.  In essence, this argument proves too much.  Whenever a court determines that a case is not ripe for adjudication, review is delayed until the alleged injury has become more concrete.  They also

----

[5] Friends of the Gorge also argues that the Scenic Area Act expressly contemplates pre-implementation judicial review of the management plan's consistency with the standards and purposes of the Act.  (Pls.' Reply (#98) at 13.)  The citizen suit provision of the Scenic Area Act does not allow challenges to the consistency of the draft management plan prior to the certification or adoption of the plan.  16 U.S.C. § 544m(b)(3)(A)(iii).  The court declines to adopt Friends of the Gorge's argument that it "logically follows that those challenges are allowed *after* the Secretary's concurrence determination" but before the plan is implemented.  (Pls.' Reply (#98) at 14.)  The court holds that Congress has not explicitly provided for pre-implementation review, therefore ripeness is governed by the *Ohio Forestry* analysis.

[6] In the Scenic Area, 115,000 acres are designated as special management areas, *Friends of the Columbia Gorge*, 171 P.3d at 948, and as of fall 2005, 27,376 of those acres are not federally owned, (Blosser Decl. (#105) at 2.), leaving 87,624 acres of federal land within the control of the Secretary and the Forest Service.  Of the non-federal land, 8,012 acres are privately owned and 19,364 acres are owned by the states and counties.  (Blosser Decl. (#105) at 2.)

argue that the counties will not "flesh-out" the regulations, therefore any flaws in the RMP will be carried down into the county ordinances.  This prediction by Friends of the Gorge illustrates the ripeness problem in this case.  This court has no way to know whether or not this prediction is true because the counties will not write their ordinances until the RMP goes into effect.  More fundamentally, even if Friends of the Gorge is correct and the regulations stay the same, a future court would have the benefit of a more specific factual scenario on which to base a decision.

Because a ripeness analysis varies based on the facts and circumstances involved in a particular claim, the ripeness of each of Friends of the Gorge's claims is analyzed below.  Due to the complexity of the case and the difficulty of resolving the question of ripeness for some of the claims the court has also taken the opportunity to discuss the merits of each claim.

## II.    Cross-Motions for Summary Judgment

Friends of the Gorge brought twelve claims challenging the Secretary's concurrence with several different elements of the RMP.  Generally, the claims argue that implementation of the RMP will cause adverse effects on the scenic, natural, and cultural resources of the Scenic Area by allowing development, grazing, and other potentially disruptive activities to occur.

### A.    *Claims 1.1, 2.1, and 6: Cumulative Adverse Effects on Scenic, Natural, and Cultural Resources*

The Scenic Area Act requires that the management plan protect the Gorge's scenic, natural, and cultural resources from adverse effects.  *See, e.g.*, 16 U.S.C. §§ 544d(d)(7)-(9).  Adverse effects are defined as:

> [A] reasonable likelihood of more than moderate adverse consequences for the scenic, cultural, recreation or natural resources of the scenic area, the determination of which is based on: (1) the context of a proposed action; (2) the intensity of a proposed action, including the magnitude and duration of an impact and the

likelihood of its occurrence; (3) the relationship between a proposed action and other similar actions which are individually insignificant but which may have cumulatively significant impacts; and (4) proven mitigation measures which the proponent of an action will implement as part of the proposal to reduce otherwise significant affects to an insignificant level.

16 U.S.C. § 544(a).

In claims 1.1, 2.1, and 6, Friends of the Gorge asserts that the RMP fails to protect the scenic, natural, and cultural resources in the special management areas from adverse cumulative effects.[7]  Generally, Friends of the Gorge claims that the Scenic Area Act requires that the management plan contain "standards" with a sufficient degree of specificity to prevent adverse cumulative impacts and that the RMP does not contain such standards.  (Pls.' Reply (#98) at 22.)

### 1.      Ripeness of the Cumulative Adverse Effects Claims

The court holds that claims 1.1, 2.1, and 6 are not ripe.  First, there is no hardship to the plaintiffs if review is delayed because there is no identified project that is going forward, no resource identified by name that will be harmed, and no identified agency action that is proceeding because of delayed review.  Second, the challenged portions of the RMP related to scenic, natural, and cultural resources contemplate future review, either by the Forest Service or by some other administrative body.  *See, e.g.*, RMP I-3-33 ("All new developments and uses . . . shall be evaluated . . . ."); I-2-23 ("An assessment shall be undertaken to determine whether any cultural resources . . . are present . . . .").  Third, the court would benefit from further factual

_____

[7] The Oregon Court of Appeals found for the Secretary on a similar claim related to the general management areas.  *Friends of the Columbia Gorge*, 171 P.3d at 960-61, 964, 967 (assignments of error 2.1, 3.1, and 4.1).  The Oregon Supreme Court may review this on appeal. Or. S. Ct. Media Release (July 2, 2008) at 3.

PAGE 19 - OPINION AND ORDER

development because it is impossible to know today what regulations might allow or successfully prevent adverse cumulative effects in the future.

### 2.    The Secretary's Concurrence with the Cumulative Adverse Effects Guidelines

The court holds that the Secretary's concurrence was not arbitrary and capricious or contrary to law as to claims 1.1, 2.1, and 6. The Scenic Area Act does not define what is necessary to prevent adverse effects to scenic, natural, and cultural resources, leaving this to the Secretary, Forest Service, and Commission. Cumulative effects are addressed when adverse effects are addressed because the definition of adverse effects includes cumulative effects. *See* 16 U.S.C. § 544(a)(3). The RMP contains provisions designed to protect the scenic, *see* RMP I-1-36 to -43, natural, *see* RMP I-3-30 to -45, and cultural, *see* RMP I-2-22 to -26, resources of the Scenic Area. Thus, the Secretary has not "entirely failed to consider an important aspect of the problem" and his decision was not arbitrary and capricious. *Motor Vehicle Mfrs.*, 463 U.S. at 43.

### B.    *Claim 1.2: Compatible Development*

In claim 1.2, Friends of the Gorge states that the RMP violates the Scenic Area Act because it contains no standards requiring that the height, overall mass, and other exterior dimensions of new development in the special management areas to be compatible with that of existing development (a requirement that is found in the general management area portion of the RMP). *See* RMP I-1-3 (general management area provision); RMP I-1-36 to -43 (special management area provisions).

### 1.    Ripeness of the Compatible Development Claim

The court holds that claim 1.2 is not ripe.  Again, the RMP does not create any legal rights or obligations.  Further agency action will occur before any new development in special management areas is allowed because permits, either state or federal, are required before any building can occur.  As noted, most of the land in the special management areas is federal land, so that a decision by a federal agency would be required before a specific project could go forward.  That decision would allow for review of the compatible development claim in a much clearer factual context.  The same basic rationale applies on non-federal land.  Given the unique co-operative nature of the Scenic Area Act, the *Ohio Forestry* analysis applies even when, as here, the subsequent administrative action is by a different government agency.  For these reasons, additional factual development is required to determine whether the failure to include this requirement would actually allow building to occur in violation of the Scenic Area Act.

### 2.    The Secretary's Concurrence with the Compatible Development Guidelines

The court holds that the Secretary's concurrence was not arbitrary and capricious or contrary to law as to claim 1.2.  The RMP contains several pages of policies and guidelines related to the protection and enhancement of scenic resources through limits on new development.  *See* RMP I-1-36 to -43.  In particular, the RMP requires that "scenic standards shall be met by blending new development with the adjacent natural landscape elements rather than with existing development."  RMP I-1-39.  A difference of opinion between Friends of the Gorge and the Secretary regarding the best way to control new development does not demonstrate a "clear error in judgment" on the part of the Secretary.  *See Lands Council*, 537

F.3d at 993.  Because there is a rational basis for the Secretary's concurrence, his decision was

not arbitrary, capricious, or in violation of the law.  *See Motor Vehicle Mfrs.*, 463 U.S. at 43.

   **C.    *Claim 2.2: Water Resource Buffers***

   In claim 2.2, Friends of the Gorge argues that the RMP's special management area water

resource buffer policies and guidelines violate the Scenic Area Act by failing to protect natural

resources in the special management areas from the individual and cumulative adverse effects of

land uses and development.[8]  The RMP requires a buffer of 200 feet for wetlands, ponds, lakes,

and perennial fish-bearing streams and fifty feet for non-fish-bearing intermittent and ephemeral

streams.[9]  RMP I-3-33 to -34.  Incursion into the buffer area is allowed with a mitigation plan

that requires that adverse effects on the natural resources of the Scenic Area be avoided.  RMP I-

3-33 to -36.  The RMP provides for enlargement of water resource buffers when necessary to

protect resource values.  RMP I-3-34.

   Friends of the Gorge contends that the water resource buffer policy violates the Scenic

Area Act for three reasons.  First, they argue that the buffers are too small, thus failing to protect

natural resources.  (Pls.' Mem. in Supp. of Summ. J. (#78) at 16.)  Second, they state that

allowing any incursions into the buffer areas is a violation of the Scenic Area Act.  (*Id.* at 17-18.)

Third, they suggest that the special management area guidelines violate the Act by being less

_____

   [8] The Oregon Court of Appeals found for the Secretary on a similar claim related to the
general management areas.  *Friends of the Columbia Gorge*, 171 P.3d at 964-65 (assignment of
error 3.3).  The Oregon Supreme Court does not appear to be reviewing this on appeal.  Or. S. Ct.
Media Release (July 2, 2008) at 3.

   [9] Ephemeral streams are those "that contain flowing water only during, and for a short
duration after, precipitation events."  RMP Glossary at 7.

protective of natural resources than the general management area guidelines, which include a

public interest test missing from the special management area guidelines.  (*Id.* at 18.)

### 1.       Ripeness of the Water Resource Buffer Claim

The court holds that claim 2.2 is not ripe.  I look first at the argument that the buffer

zones are too small.  There is no hardship to Friends of the Gorge if review is delayed because

there is no identified stream, pond, or wetland that will be harmed by the proposed buffer zones.

Furthermore, a decision regarding the size of the buffer zones today would interfere with the

Secretary's further review of the buffer zones under the RMP, which provides for enlargement of

buffers where necessary to protect resource values.   RMP I-3-34.  Finally, the court would

benefit from further factual development because the proper width of a buffer zone will vary for

each pond, wetland, lake, and stream in the Scenic Area.

As for the claim that the RMP improperly allows incursions into the buffer zones, similar

concerns exist.  Again, there is no particular water resource that Friends of the Gorge can state

will be harmed if this court does not decide this issue today.  Incursions are only allowed "subject

to compliance with guidelines for the protection of scenic, natural, cultural, and recreation

resources," therefore the Secretary will have further involvement before any incursions occur.

RMP I-3-30.  And finally, this court does not have the benefit of knowing the nature of the

incursion or the nature of the water resource, both of which are necessary for an understanding of

the what, if any, adverse effects may be caused by an incursion.

Finally, the difference between the special and general management area water resource

guidelines does not make this claim ripe.  If it were true that the general management area

guidelines were more protective than those for the special management area, there would be an

argument that the Secretary's concurrence was irrational.  However, that is not the case here.  The

special and general management areas have different schemes for the protection of water

resources.  The public interest test does not necessarily make the general management area

guidelines more protective.  In fact, once the guidelines are implemented, the special

management area guidelines may prove to be more protective, even without the public interest

test.  Nothing in the language of the two sets of guidelines dictates that the general management

areas will get more protection.  Therefore, the above ripeness concerns are applicable to this

challenge as well.  Friends of the Gorge is not immediately harmed by the existence of these

guidelines.  The Secretary will have further involvement in the development of the buffer zones

on a case by case basis.  And if, in the future, Friends of the Gorge believes that the failure to

conduct a public interest test causes a water resource buffer to violate the Scenic Area Act, the

hypothetical future court would have the benefit of a specific factual scenario upon which to base

a decision.

> **2.    The Secretary's Concurrence with the Water Resource Buffer
> Guidelines**

The court holds that the Secretary's concurrence was not arbitrary and capricious or

contrary to law as to claim 2.2.  There is evidence in the record that the Washington Department

of Fish and Wildlife, among others, argued for larger buffer areas.  (*See* Kahn Decl. in Supp. of

Mot. for Summ. J. (#79) at Ex. K.)  However, two Forest Service scientists conducted a

"Biological Evaluation of the Potential Impacts to Sensitive Flora and Fauna" to determine the

efficacy of the chosen buffers and determined that the buffers were sufficient so that there would

be a "'no effects' call."  (Defs.' Reply (#112) at Ex. F.)  "When specialists express conflicting

PAGE 24 - OPINION AND ORDER

views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Lands Council*, 537 F.3d at 1000 (quoting *Marsh*, 490 U.S. at 378).   The Forest Service experts indicated that the Biological Evaluation was based on a review of the original management plan and the changes made in the RMP.  (Defs.' Reply (#112) at Ex. F.)  They found that because the RMP allows the exact buffer size to be determined by a biologist, on a case by case basis, that the RMP adequately protected water resources.  (*Id.*)  This is a reasonable opinion.  Therefore, it is not arbitrary and capricious for the Secretary to base his concurrence on the Forest Service scientists' opinions, even though it was contrary to evidence presented by other experts.

### D.    *Claim 2.3: Livestock Grazing*

In claim 2.3, Friends of the Gorge argues that the RMP provision allowing agricultural uses in the special management areas as "uses allowed outright" violates the Scenic Area Act by failing to protect natural resources from the individual and cumulative adverse effects of livestock grazing.[10]  *See* RMP II-7-11.  Agricultural uses, including livestock grazing, are allowed within the special management areas only on land that has been "previously disturbed and regularly worked."  *Id.*  The RMP defines "previously disturbed" as "[a]n area of land where the natural surface has been graded, excavated, paved and/or graveled."  RMP Glossary at 14.  Grazing is not allowed in areas designated as "open spaces,"[11] *see* RMP II-7-16 to -20, and any

_____

[10] The Oregon Court of Appeals found for the Secretary on a similar claim related to the general management areas.  *Friends of the Columbia Gorge*, 171 P.3d at 965-66 (assignment of error 3.4).  The Oregon Supreme Court may review this on appeal.  Or. S. Ct. Media Release (July 2, 2008) at 3.

[11] "Open spaces represent some of the most significant and sensitive resources in the Scenic Area."  RMP II-3-1.  The open space designation protects these resources from "uses that

new grazing on federal land must be reviewed under NEPA and the National Forest Land and

Resource Management Plan.  (Defs.' Mem. in Supp. of Summ. J. (#92) at 38.)

### 1.    Ripeness of the Livestock Grazing Claim

Although livestock grazing is a "use allowed outright," the parties seem to agree that

before it occurs on any federal, state, or county owned land in the special management area,

further review will occur.  (Summ. J. Hr'g Tr. at 26-29.)  This leaves about 8,000 acres, out of

115,000 acres in the special management areas, where immediate grazing might occur without

further review.  A claim that allowing such grazing fails to protect natural resources from adverse

effects seems to be an exercise in speculation.  Key questions like how much grazing, on what

land, with what sort of adverse effects, are left unanswered.  There remains substantial

uncertainty, however, about the nature of any subsequent agency review of specific grazing

applications, at least on public land.  And it appears to be possible that grazing could occur on

private land without any further review—albeit only on land that has been previously disturbed.

Because the parties were unable to clarify this issue, the court will assume the claim is ripe.

### 2.    The Secretary's Concurrence with the Livestock Grazing Guidelines

The court holds that the Secretary's concurrence was not arbitrary and capricious or

contrary to law as to claim 2.3.  Friends of the Gorge states that "scientific research shows that

grazing has a high potential to adversely affect water resources, fish and wildlife habitat, rare

plants, and native plant communities."  (Pls.' Mem. in Supp. of Summ. J. (#78) at 19 (citing Exs.

Q and R).)  However, livestock grazing is only allowed on land that has been "regularly worked"

and graded, excavated, paved, and/or graveled.  *See* RMP Glossary at 14.  It does not appear

_____

could adversely affect them."  RMP II-3-2.

PAGE 26 - OPINION AND ORDER

likely that grazing would be possible on much land meeting this description, or even that rare

plants or other wildlife will be found in such an area.  Furthermore, a goal of the Scenic Area Act

is to "protect and support the economy of the Columbia River Gorge" in a way that is consistent

with the "enhancement of the scenic, cultural, recreational, and natural resources" of the Gorge.

16 U.S.C. § 544a.  Thus, allowing this very modest economic use of land is in keeping with the

purposes of the Act.  Considering the goals of the Act and the restrictions on the type of land that

can be grazed, the Secretary's concurrence was not arbitrary and capricious, at least in the

abstract sense involved in this facial challenge.

 **E.**  *Claim 2.4: Replacement of Culverts on Ephemeral Streams*

   In claim 2.4, Friends of the Gorge claims that the RMP provision allowing the

replacement and expansion of existing culverts for ephemeral streams and ditches in the special

management areas, including areas zoned open space, as "uses allowed outright" violates the

Scenic Area Act by failing to protect natural resources from individual and cumulative adverse

effects.[12]  *See* RMP II-7-13 (all land use designations except open space and agricultural-special),

-17 (areas designated open space).  The visible ends of the new culverts are required to be "dark

and non-reflective."  *Id.*  Replacement of culverts on perennial streams is allowed only after

review for impacts to protected resources.  *See* RMP I-3-30 ("Uses that may impact wetland,

streams, ponds, lakes, and riparian areas acreage and functions, water quality, natural drainage, or

wildlife habitat may be allowed in their buffer zones, subject to compliance with guidelines for

---

   [12] The Oregon Court of Appeals found for the Secretary on a similar claim related to the general management areas.  *Friends of the Columbia Gorge*, 171 P.3d at 968 (assignment of error eight).  The Oregon Supreme Court does not appear to be reviewing this on appeal.  Or. S. Ct. Media Release (July 2, 2008) at 3.

the protection of scenic, natural, cultural, and recreation resources and the approval criteria in this section.")

### 1.      Ripeness of the Culvert Replacement Claim

Like livestock grazing, culvert replacement on ephemeral streams seems to be very limited in scope, but the record is unclear as to whether any meaningful administrative action will occur before a specific culvert is replaced.  The challenged provision is limited in scope because it allows only for replacing culverts, not the building of new culverts, and only in ephemeral streams.  Some further review appears to be necessary, at least at the county level, because county, state, and federal regulations as to air and water quality must be followed in all actions taken in the special management areas.  *See* RMP I-3-31.  Permits are probably necessary for construction on federal, state, or county land and may be necessary on private land, depending on county ordinances not before the court.  However, the permitting processes, even those on federal land, would not necessarily take into account the concerns of the Scenic Area Act in protecting the scenic, natural, and cultural resources of the Gorge.  It is worth comparing this action with an action challenging replacement of a culvert on a perennial stream—a portion of the RMP not challenged by Friends of the Gorge.  In such a hypothetical future case, the reviewing court would know which culvert was at issue, on what sort of land, having what sort of alleged impacts.  None of those questions are answered here.

As with the livestock grazing claim, the court has serious concerns regarding the ripeness of this claim because further factual development would be helpful to determine whether the regulations in the RMP allow adverse effects in the Scenic Area.  Any hardship to the Friends of the Gorge results only from a chain of hypothetical events that the court cannot know will happen

PAGE 28 - OPINION AND ORDER

because it is possible that culverts can and will be replaced without creating the relevant adverse effects.  But because the record is not clear as to the nature or even the availability of any subsequent administrative review, the court will assume ripeness.

### 2.    The Secretary's Concurrence with the Culvert Replacement Guidelines

The court holds that the Secretary's concurrence was not arbitrary and capricious or contrary to law as to claim 2.4.  The RMP requires that all county, state, and federal regulations for air or water quality be followed at all times within the special management areas.  *See* RMP I-3-31.  Therefore, culverts cannot be replaced if the replacement would cause the water quality of the ephemeral stream, ditch, or other water source, to fall below the relevant standards.  Because of the ratio of public to private land, in almost all imaginable cases ensuring the maintenance of water quality would be the subject of some permitting process.

Further, culverts in ephemeral streams and ditches are in locations that have already been disturbed by building the road, digging the ditch, and placing the original culvert.  The Secretary also notes that failing to replace an undersized culvert can cause extensive resource damage. (Defs.' Mem. in Supp. of Summ. J. (#92) at 39.)  Taking these factors into account, the Secretary's explanation does not run "counter to the evidence" and his concurrence is not arbitrary and capricious or contrary to law.  *See Motor Vehicle Mfrs.*, 463 U.S. at 43.

### F.    *Claim 3*

Friends of the Gorge appears to have dropped this claim as it is not discussed in the pleadings.

G.    *Claim 4: Forest Practices*

In claim four, Friends of the Gorge argues that the RMP's special management area forest

practices policies and guidelines violate the Scenic Area Act because they fail to ensure that

forest practices in the special management areas will not adversely affect the scenic and natural

resources of the Scenic Area.  *See* RMP II-2-16–27.

The RMP contains new rules allowing "vegetation management" to promote "forest

health," subject to review for compliance with scenic, cultural, natural, and recreational resources

guidelines, *see* RMP at II-3-12, and deviations from forest practices guidelines to promote "forest

health" and "ecosystem function," *see, e.g.*, RMP at II-2-25, -26.  "Forest health" is defined as:

"A measure of the robustness of forest ecosystems.  Forests are deemed healthy when they have

capacity across the landscape for renewal, for the maintenance of wildlife habitats, for recovery

from a  wide range of disturbances, and for retention of their resilience."  RMP Glossary at 8.

1.    **Ripeness of the Forest Practices Claim**

The court holds that claim four is not ripe.  This claim is almost identical to the question

before the Supreme Court in *Ohio Forestry*.  *See* 523 U.S. 726.  First, withholding immediate

review would not cause Friends of the Gorge significant hardship.  As with the management plan

at issue in *Ohio Forestry*, the RMP does not create any rights or liabilities with regard to forest

stands.  *See id.* at 733.  A site plan must be prepared by an applicant before any forest practice

may occur.  The site plan will then be reviewed by the Forest Service, in collaboration with

county and/or state regulatory agencies.  RMP II-2-16.  Second, an immediate decision would

interfere with the Forest Service's ability to revise its policies with regard to particular forest

stands and ensure forest health across the Scenic Area.  *See Ohio Forestry*, 523 U.S. at 735.

Third, the court would benefit from further factual development.  A future court would have the benefit of knowing exactly what "vegetation management" was proposed, how many trees would be cut, where the cutting would occur, and how the cutting would occur, none of which is before the court today.

### 2.    The Secretary's Concurrence with the Forest Practices Guidelines

The court holds that the Secretary's concurrence was not arbitrary and capricious or contrary to law as to claim four.  The management plan guidelines direct the Forest Service to review a site plan for all special management area forest practices for compliance with the RMP regarding protection of scenic, natural, and cultural resources.  RMP II-2-16.  To aid in the required review, the RMP contains quantitative metrics for use in designing treatments so as to achieve the desired forest structure and pattern.  RMP II-2-27.  Further, the Secretary argues that the definition of "forest health" must be somewhat elastic because all forest stands are different.  (Defs.' Mem. in Supp. of Summ. J. (#92) at 40.)  Finally, Congress delegated development of the management plan to the Commission, Secretary, and Forest Service, and the Forest Service has significant expertise in the area of forest practices, therefore deference to the agency's opinion is appropriate.  *See Chevron*, 467 U.S. at 843-44.

### H.    *Claim 5: Recreation Guidelines*

In claim five, Friends of the Gorge argues that the special management area Recreation Intensity Class 2 guidelines violate the Scenic Area Act by allowing recreational vehicle campgrounds in special management area Recreation Intensity Class 2 zones, thereby failing to protect recreation resources on lands zoned for semi-primitive use.  *See* RMP I-4-27.  The RMP designates Recreational Intensity Classes ("RICs") for land throughout the Scenic Area and the

PAGE 31 - OPINION AND ORDER

RIC level dictates the scope and intensity of allowed recreational uses.  RIC 2 areas are restricted to "low intensity" uses, where "the emphasis is to provide opportunities for semi-primitive recreation," where people can "escape from noise and crowds."  RMP I-4-27.  "Semi-primitive" recreation opportunities are defined as "[a]reas accessible only by primitive transportation routes, with low to moderately infrequent human encounters and with only subtle modifications to the natural setting."  RMP Glossary at 15.

In the general management areas, regulations of RIC 2 areas limit campgrounds to tents only and allow only cars, not "vehicles," which might include recreational vehicles.  RMP I-4-17. In the special management areas, regulations of RIC 2 areas allow for "vehicles," not just cars. RMP I-4-27.  Friends of the Gorge argues that the special management area guidelines violate the Scenic Area Act because they adversely affect recreation resources, are inconsistent with the RMP definition of RIC 2 areas, and are less protective than the guidelines for the general management areas.  (Pls.' Mem. in Supp. of Summ. J. (#78) at 24-26.)

### 1.    Ripeness of the Recreation Guidelines Claim

The court holds that claim five is not ripe.  First, the court would benefit from further factual development because it is impossible to know today whether the use of the word "vehicle" will adversely affect recreation resources in violation of the Scenic Area Act.  Second, further review will occur before any potential for injury to Friends of the Gorge.  The development of new and the retrofitting of current recreation areas is done by county, state, and federal agencies.  In implementing the RMP, those agencies could choose to further refine the regulations, as was the case in *Ohio Forestry*.  For example, while recreational vehicles are not expressly prohibited in these RIC 2 areas under the RMP, it may be the case that they are never

PAGE 32 - OPINION AND ORDER

actually allowed.  Even if they are allowed in some RIC 2 areas, a later court could make a

determination on whether allowing recreational vehicles violates the Scenic Area Act or is

inconsistent with the definition of RIC 2 areas, based on location specific facts.  Third, the

difference in the use of "car" versus "vehicle" does not necessarily mean that the RIC 2

campgrounds in general management areas are more protective of recreation resources.  Agencies

may never allow recreational vehicles, or they may limit the size or allow only handicapped

visitors to enter with such vehicles.

### 2.    The Secretary's Concurrence with the Recreation Guidelines

The court holds that the Secretary's concurrence was not arbitrary and capricious or

contrary to law as to claim five.  There is no evidence in the record that the use of the word

vehicle will adversely affect recreation resources in violation of the Scenic Area Act.  In the

absence of such evidence, the Secretary's concurrence was not arbitrary and capricious.  The

second argument appears to arise out of a disagreement over the definition of terms used in the

RMP, specifically "semi-primitive recreation."  Internally inconsistent definitions within the

RMP would be evidence that the Secretary had acted in an arbitrary and capricious manner.

However, an "*emphasis* [on providing] opportunities for semi-primitive recreation" does not so

limit the Secretary that allowing recreational vehicles is inconsistent with the definition of a RIC

2 zone.  RMP I-4-27 (emphasis added).  Finally, although it would be logical for the RIC 2 areas

to have similar guidelines for general and special management areas, it does not follow that it is

arbitrary and capricious for the guidelines to have minor differences in wording.  Because there is

no evidence that the use of the term "vehicle" will cause special management area RIC 2 zones to

be less protected than those in the general management areas, the Secretary's concurrence was not arbitrary and capricious or contrary to law.

## I.    *Claim 7: New Dwellings*

In claim seven, Friends of the Gorge argues that the RMP violates the Scenic Area Act by allowing new dwellings on parcels smaller than forty acres in the special management areas.  The Scenic Area Act requires that the management plan "prohibit major development actions in special management areas," except for certain exceptions not applicable to this case.  16 U.S.C. § 544d(d)(5).  "Major development actions" are defined as, among other things, "permits for siting or construction within a special management area of any residence or other related major structure on any parcel of land less than forty acres in size."  *Id.* § 544(j)(4).

Friends of the Gorge points to three places where the RMP allegedly violates this provision of the Scenic Area Act.  First, new single-family dwellings are allowed on any legally created lot, with no mention of parcel size.  RMP II-4-11.  Second, construction of "new dwelling units" is allowed at Rowena Dell, even though many of the lots are under forty acres.  RMP II-4-10.  Third, the forty-acre minimum parcel size is not incorporated in a guideline allowing the construction of farm-labor dwellings.  RMP II-1-23 to -24.

### 1.    Ripeness of the New Dwellings Claim

The court holds that the claim is ripe as to the Rowena Dell guideline and not ripe as to the single-family and farm-labor dwelling guidelines.  Applications for development must be reviewed by county agencies before any building may occur.  There is no way to know whether the agencies will allow building to occur on parcels that are less than forty acres, outside of Rowena Dell.  Friends of the Gorge argues that because counties generally draft their ordinances

based on the management plan, if the management plan is not specific regarding the limitation it will not be incorporated in the agency's decision making process.  (Pls.' Reply (#98) at 42.)  However, a ripeness analysis does not ask the court to guess at how likely a result will be, rather it asks whether review at a later time is more appropriate.  In this case, Friends of the Gorge can bring suit if and when a county approves plans to construct a single-family or farm-labor dwelling on a lot that is less than forty acres.  The question of Rowena Dell is different because the parcels have already been created and the RMP specifically allows development, therefore the counties would be in violation of the management plan if they refused to allow construction on the Rowena Dell lots.

### 2.    The Secretary's Concurrence with the New Dwellings Guidelines

The court holds that the Secretary's concurrence was contrary to law as to the Rowena Dell guideline.  The Secretary argues that allowing building on less than forty acres is a "reasonable accommodation of the other purposes" of the Scenic Area Act, namely that the Act should protect and support the economy of the Gorge and the agricultural lands for agricultural uses, *see* 16 U.S.C. § 544a, particularly as to Rowena Dell, which was approved before the Scenic Area Act was passed.  (Defs.' Mem. in Supp. of Summ. J. (#92) at 43.)  He argues that his interpretation of the statute should receive deference in the absence of a manifest "plain meaning" of the statute.  (Defs. Mem. in Supp. of Summ. J. (#92) at 43 (citing *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)).)  The Secretary states that the meaning is not plain because there is tension between the goals of the statute: not allowing development on parcels less than forty acres and supporting the economy and agricultural uses.  (Defs.' Reply (#112) at 21.)

PAGE 35 - OPINION AND ORDER

The court holds that the Scenic Area Act's ban on major development actions is plain and unambiguous. Specifically, the prohibition against residences on "less than forty acres" is about as unambiguous as a statute can get. The Secretary's contrary interpretation is not entitled to deference. *See Chevron*, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). The Rowena Dell guideline at issue, *see* RMP II-4-10, is in direct contradiction of the plain language of the statute. Therefore, the Secretary's concurrence was contrary to law.

## J.    *Claim 8: Expansion of Commercial and Multifamily Uses*

In claim eight, Friends of the Gorge argues that the RMP provision allowing expansion of existing commercial and multifamily residential uses in the special management areas, *see* RMP II-7-8, violates the Scenic Area Act because the provision allows major development actions, which are expressly prohibited by the Act.[13] As discussed above, the Act prohibits major development actions in the special management areas. *See* 16 U.S.C. § 544d(d)(5). "Major development actions" include, "any permit for siting or construction outside urban areas of multifamily residential, industrial or commercial facilities, except such facilities as are included in the recreation assessment." *Id.* § 544(j)(2).

The RMP allows existing commercial and multifamily residential uses in the special management areas to "expand as necessary for successful operation on the dedicated site." RMP

---

[13] The Oregon Court of Appeals found for Friends of the Gorge on a similar claim related to the general management areas. *Friends of the Columbia Gorge*, 171 P.3d at 971-72 (assignment of error thirteen). The Oregon Supreme Court does not appear to be reviewing this on appeal. Or. S. Ct. Media Release (July 2, 2008) at 3.

II-7-8.  The "dedicated site" is defined as the "area actively devoted to the current use and as delineated on the site plan."  RMP Glossary at 6.  Friends of the Gorge states that because the dedicated site plan can be larger than the area currently covered by the structure, the RMP guideline allows "construction" of commercial and multifamily residential facilities.  (Pls.' Mem. in Supp. of Summ. J. (#78) at 28.)  The Secretary contends that allowing expansion of the applicable existing uses under narrowly tailored conditions is a reasonable interpretation of the Scenic Area Act.  (Defs.' Mem. in Supp. of Summ. J. (#92) at 44.)

       1.       **Ripeness of the Expansion of Commercial and Multifamily Uses Claim**

The court holds that claim eight is ripe.  As with the Rowena Dell portion of claim seven, Friends of the Gorge's claim here requires only that the court look at the language of the RMP and the language of the Scenic Area Act to determine whether there has been a violation.  No further factual development is necessary.  It is not necessary, for example, to know which particular site is being developed, with what sort of business.  Nor is it merely speculative whether a county would approve such a project, because the county must conform to the requirements of the RMP.

       2.       **The Secretary's Concurrence with the Commercial and Multifamily Uses Guidelines**

The court holds that the Secretary's concurrence was contrary to law as to claim eight. The Secretary argues that the guideline is a reasonable interpretation of the Scenic Area Act, which accommodates existing uses, and that this court should defer to the Secretary's reasonable interpretation.  (Defs.' Mem in Supp. of Summ. J. (#92) at 44.)  However, as discussed in relation to claim seven, Congress was clear in the Scenic Area Act that major development actions, as

PAGE 37 - OPINION AND ORDER

defined, are prohibited in special management areas.  The Secretary is not entitled to deference in interpreting a plain and unambiguous statutory provision.  *See Chevron*, 467 U.S. at 842-43. Here, the Secretary essentially contends that expansion of existing structures would not necessarily involve "siting or construction," as those words are used in the Act.  I disagree.  The language of the RMP is in direct violation of the plain and unambiguous language of the Scenic Area Act, therefore the Secretary's concurrence was contrary to law, as to this claim.

### III.    The Secretary's Motion for a Stay

The court denies the Secretary's motion for a stay pending the decision of the Oregon Supreme Court in the appeal taken from the Oregon Court of Appeals decision, *Friends of the Columbia Gorge, Inc. v. Columbia River Gorge Commission*, 171 P.3d 942 (Or. Ct. App. 2007). The Oregon Court of Appeals has stated that Oregon courts do not have jurisdiction over claims relating to the special management areas of the Scenic Area and that issue was not appealed to the Oregon Supreme Court, therefore there is no risk of inconsistent decisions.

### CONCLUSION

Based on the foregoing, Friends of the Gorge's Motion for Summary Judgment (#76) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to Rowena Dell in claim seven and as to claim eight and DENIED as to the remainder of claim seven and as to claims one through six.  The Secretary's Cross-Motion (#91) is therefore GRANTED IN PART and DENIED IN PART.  The motion is DENIED as to Rowena Dell in claim seven and as to

claim eight and GRANTED as to the remainder of claim seven and as to claims one through six.

The Secretary's Motion for a Stay (#97) is DENIED.

IT IS SO ORDERED.

     Dated this __24th__ day of November, 2008.


                    /s/ Michael W. Mosman_____
                    MICHAEL W. MOSMAN
                    United States District Judge